ANNA C. VAN HOESEN, Appellant, v. H. E. TEACHOUT *et al.*, Appellees.

Fraud: CONVEYANCE TO WIFE DISREGARDED. V. purchased one hundred shares of stock for five thousand dollars. Of this sum he had of his own money one thousand, five hundred dollars, which he paid, and borrowed three thousand, five hundred dollars, giving T. as his indorser, and agreeing to give T. the stock, when issued, as collateral security. At V.'s request, only one share of the stock was issued to him, and ninety-nine shares were issued to his wife. The stock was handed to T. in an envelope. Afterwards V. desired to sell or trade the stock, and he procured the envelope and contents of T., with the understanding that he should return the stock, or what V. procured in exchange for it. V. sold the stock, taking therefor a deed to his wife for some land, and notes for three thousand, five hundred dollars. He then returned the envelope to T., who received it and put it away unopened, believing that it contained either the stock or its proceeds. After this V. again asked for and received the envelope, on the ground that he desired to make another trade, and upon the agreement that he would return the collaterals or their proceeds, but he failed to do so. T. was compelled to pay the note which he had indorsed for V., and he obtained judgment against V. for that amount. V. had no property in his own name subject to execution, and an execution issued upon the judgment was levied on the land conveyed to V.'s wife as part payment for the stock, whereupon the wife brought this action to enjoin the sale of the land. *Held*, that her action was without equity, and was properly dismissed.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

TUESDAY, MAY 23, 1893.

ACTION in equity to restrain the sale on an execution issued against P. E. Van Hoesen of certain real estate alleged to belong to the plaintiff. From a decree and judgment for the defendants the plaintiff appeals.—*Affirmed.*

*Earle & Prouty* and *Mitchell & Dudley*, for appellant.

*Read & Read* and *Kauffman & Guernsey*, for appellees.

KINNE, J.—I. The facts touching this controversy are as follows: In 1883 defendant Teachout was interested in the Des Moines Ice Company. P. E. Van Hoesen, the husband of the plaintiff, had been consulting with Teachout with reference to investing one thousand, five hundred dollars. On Teachout's recommendation, P. E. Van Hoesen agreed to take stock in the ice company to the amount of one thousand, five hundred dollars. He paid this money in, as it was needed for use in the business. The stock was not issued until March 25, 1885. Meantime P. E. Van Hoesen expressed a desire to own a one-third interest in the company, and induced Teachout to indorse his note for three thousand, five hundred dollars, to enable him to purchase the additional stock. P. E. Van Hoesen received the three thousand, five hundred dollars, which, with the money he had already paid in, entitled him to one hundred shares of stock in the company. It was agreed that Teachout should take and hold the Van Hoesen stock as collateral to protect him as against his indorsement of the three thousand, five hundred dollar note with Van Hoesen. The stock was not issued for about a year after the money on the three thousand, five hundred dollar note was obtained. Van Hoesen was entitled to one hundred shares of stock. When the stock was issued, P. E.

Van Hoesen wanted one share issued in his own name and ninety-nine shares issued in his wife's, the plaintiff, for special reasons not disclosed by him. It was so issued. Teachout supposed that he was to receive the entire one hundred shares as collateral as aforesaid, and testifies that such was the arrangement. The stock was handed to him in an envelope. He retained the envelope, with its inclosures, until August, 1885.

Van Hoesen sold his interest in the ice company in 1885 to Jones & Towne, at which time Van Hoesen called upon Teachout for the stock. The latter handed him the envelope unopened, under an agreement that Van Hoesen would bring back to Teachout the collaterals or the proceeds of the trade, that he might still hold them as a protection against liability for his indorsement aforesaid. It is not disputed that Teachout would not have turned over the collaterals to Van Hoesen in the absence of the agreement to return them or their proceeds, or to give him a lien on property received from them. Van Hoesen, after completing his trade with Jones & Towne, returned to Teachout the envelope, with inclosures, which the latter put away without examining, believing that it contained either the same securities or their proceeds, according to agreement. Afterwards Van Hoesen called for the envelope, stating that he had a trade on hand with one Wishard, and promised he would return the collaterals or their proceeds to Teachout. Relying on his promise, Teachout gave him the envelope with its inclosures. Van Hoesen thus obtained possession of the collaterals, and never returned them or their proceeds to Teachout.

It seems that Van Hoesen sold to Jones & Towne the entire one hundred shares of stock, which was paid for by the conveyance to plaintiff of the real estate in controversy in this suit. Jones & Towne also executed their seven notes for five hundred dollars each to P. E. Van Hoesen. It is by virtue of the title

obtained in this trade by a conveyance made to the
plaintiff that she claims the real estate in question as
her property, free from the indebtedness of Teachout.
Teachout was compelled to and did pay the three
thousand, five hundred dollar note, with interest.  He
then brought suit against P. E. Van Hoesen, obtained
a judgment, and caused an execution to issue, which
was levied upon the real estate conveyed by Jones &
Towne to plaintiff in consideration of the one hundred
shares of stock.   The plaintiff then brought this action
to enjoin the sale of the real estate levied upon.   The
court below found that the real estate was in fact the
property of P. E. Van Hoesen; that the plaintiff was
entitled to no relief, and dismissed her bill.   It appears
that P. E. Van Hoesen had no other property than the
money he put into this stock.

II.  The only question we are called upon to deter-
mine is: was the real estate levied upon, and the title to
which was in plaintiff, in fact the property of P. E. Van
Hoesen, and hence subject to the execution of Teach-
out.   It is not our custom to enter into an extended
discussion of the evidence in equity cases.   We can
only state in a general way our conclusions, and the
reasons on which they rest.   It may be conceded that
the plaintiff by introducing her deeds in evidence
established a *prima facie* case.   To our minds, there
is nothing to show that the funds put into the ice
company's stock by P. E. Van Hoesen were ever the
property of the plaintiff.   Clearly the three thousand,
five hundred dollars which was borrowed by the hus-
band on the strength of Teachout's indorsement was
not hers.   Nothing appears in this record which would
justify the appellant's contention that the money paid
in by P. E. Van Hoesen, outside of the three thousand,
five hundred dollars, belonged to the plaintiff.   It
clearly appears that the husband treated it as his own,
and that no claim thereto was ever made to it by the

plaintiff until she instituted this suit claiming the property which was the proceeds of stock purchased with all the money.

We do not consider the fact that nearly all the stock was issued in the plaintiff's name as of controlling importance. Under the circumstances surrounding the issuance of the stock, it can not be said that the mere fact that it was issued in the plaintiff's name showed that she had ever furnished any of the money that was paid for the stock. It does not appear that the plaintiff was the party negotiated with in making the trade with Jones & Towne. It appears also that P. E. Van Hoesen and Jones & Towne entered into a written contract touching the deal which resulted in the purchase of the Van Hoesen stock. We think it sufficiently appears that P. E. Van Hoesen had no property other than this stock, and the property obtained for it by the plaintiff.

It is said that Teachout ought not to recover, as he surrendered collateral which was ample to indemnify him for his liability as indorser. We think he never surrendered it, but it was obtained from him by reason of the representations of P. E. Van Hoesen that he would return it or its proceeds, which he never did.

It was claimed that Teachout was entitled to hold only sixty-four shares of the stock as security in any event. True there was a paper signed by plaintiff pledging sixty-four shares to Teachout, to secure him as indorser; but it appears that Teachout did not know of the existence of that paper. He had never examined the contents of the envelope which he supposed contained the collaterals, and, in view of his testimony that the arrangment was that he was to have the entire one hundred shares as collateral, we conclude that such was the agreement. Neither the plaintiff nor her husband testified. We may fairly presume that what Teachout says about it is true, else they would have testi-

fied to the contrary.    Now, it occurs to us it would be most inequitable and unjust to hold that because the plaintiff's husband practiced a fraud on Teachout, whereby he secured the collaterals, and then traded them to Jones & Towne in part for the land in controversy, the plaintiff should hold the same free from the claims of Teachout.    Plaintiff never parted with anything of value as a consideration for the stock, or any of it, so far as appears from the record.    For some reason, known only to her husband and herself, the stock was issued in her name.    It was bought with the husband's money, and there is no reason why it or the property purchased with it should not be charged with the indebtedness due to Teachout from the husband.

We have not deemed it necessary to discuss the legal propositions stated by counsel.    The controversy depends largely upon the facts, and we think they are against the plaintiff.    The judgment of the district court is AFFIRMED.