IN RE ESTATE OF SMITH C. GORMLY.

IVY M. GORMLY et al., Appellants, v. SMITH W. TODD et al., Appellees.

**WILLS:**     Testamentary Capacity—Evidence.     Evidence reviewed, and held insufficient to support a verdict of mental incompetency to execute a will.

SALINGER, J., dissents.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

FEBRUARY 17, 1920.

THIS is a will contest.   At the close of contestants' evidence, the trial court directed a verdict for the proponents.   The contestants appeal.—*Affirmed.*

*Sears, Snyder & Gleysteen, Vail E. Purdy*, and *H. C. Harper*, for appellants.

*Kass Bros., Jepson & Struble*, and *Jepson & Stecker*, for appellees.

EVANS, J.—The testator was Smith C. Gormly. At the trial, the contestants admitted the due execution of the will, and assumed the full burden of proof. The grounds of the contest were mental incapacity and undue influence. The testator died on January 25, 1919, at the age of 85 years. He was a bachelor. He had left his birthplace in Pennsylvania about 55 years ago, and had come to Sioux City, where he lived ever since. He was a ship carpenter by trade. During his residence in Sioux City, he never communicated with friend or relative in Pennsylvania. His near relatives were a brother and a sister. These both predeceased him. The brother was survived by two daughters, who are the contestants herein. The sister was survived by two sons, who are the proponents. The testator was thrifty and careful in his business affairs and frugal in his expenditures. He left an estate valued at between $40,000 and $50,000. This estate was devised by him to his two nephews, in unequal parts. The proponent Smith Todd, the namesake of the testator, received the residuary and larger share. Two years before his death, the testator had suffered an accident, resulting in a broken hip. This injury affected his general strength and health. For 20 years, he had been so hard of hearing that communication could be made to him only by writing. He would answer the written communication vocally. In the last weeks or months of his life, he developed heart trouble, and grew gradually weaker, until he died. The will was made on January 7th. On January 3d, his nephew, Smith Todd, had come to visit him. This visit resulted pursuant to correspondence initiated by the testator. After 50 years of

silence and of a lonely life, upon which at last the shades of night were falling, he wrote to this proponent the following letter:

"Sioux City, Iowa, Dec. 18, 1918.

"Smith Todd,

"Industry, Pa.

"I am writing to find out where you and Johnny Todd are living or if you are living at all. It has been about ten years since I heard anything from Beaver County. I used to take the Beaver Star and while it was running I got the Beaver County News, but it suspended about ten years ago and I have heard nothing from there since.

"Now, I am not writing much in this letter but if you and Johnny will write I will write of importance to both of you in my next letter. I don't know if John and your mother are living or not. Please answer soon yours and address 512 Pearl Str. Sioux City, Iowa."

Pursuant to the correspondence thus initiated, this nephew came to visit his uncle on January 3, 1919. The will was made four days later. His home at that time was at the Washington Hotel. The will was made at the testator's room in the forenoon of its date. In the evening, the testator was taken to the hospital, where he remained until his death. On the question of mental capacity, the evidence is very meager, indeed. The attending physician, Dr. Keeffe, testified for the contestants as follows:

"I would say that Gormly's mind was enfeebled to the same extent his physical condition was,—very feeble,—when I called on him at the Washington House, and that gradually grew worse till death."

No other medical evidence was adduced; nor was there any stronger evidence of mental incapacity adduced from any witness. The testimony for the contestants affirmatively disclosed intelligent conversation through the medium of writing, and disclosed no derangement or abnormal

condition, other than the weakness, physical and mental, incident to his illness.

We are clear that the evidence was wholly insufficient to have justified a verdict adverse to the will on the ground of mental incapacity. No useful purpose would be served by our dealing with further details.

On the question of undue influence, there was evidence tending to show that the proponent was present when the will was made, and that the terms of the will were more or less discussed with him. This evidence was, of course, admissible, and has its significance, so far as it goes. But there is no evidence of undue influence exercised by him, unless it be found in the mere fact that he was the larger beneficiary of the will. This falls far short of proof of undue influence. That the testator intended to make him a beneficiary of his will is foreshadowed in the letter above quoted. There was no one behind that letter except the testator. That the correspondence thus initiated should have brought the nephew to the bedside of the uncle was consistent with good motives. His presence there, accordingly, was not the fair target of suspicion.

The trial court properly held that there was not sufficient evidence of undue influence to support a verdict. The order of the trial court is, accordingly,—*Affirmed*.

WEAVER, C. J., GAYNOR and PRESTON, JJ., concur.

SALINGER, J. (dissenting). Upon testimony disclosed by the opinion, and upon an examination of the record, I reach the conclusion that both mental capacity and undue influence were jury questions. The decision by the majority is another instance of making an exception in the law governing review on the law side. I know of no reason why review of mental capacity to make a will, and whether it was made without undue influence, should be treated as a

chancery appeal.    My reasons for this dissent are more fully expressed in one addressed to the case of *In re Bresler's Estate,* 188 Iowa 458.